Citation Nr: 1008507 
Decision Date: 03/08/10 Archive Date: 03/17/10

DOCKET NO. 07-24 090A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs North Florida/South Georgia 
Veterans Health System


THE ISSUE

Entitlement to payment or reimbursement for medical services 
provided by Halifax Hospital on April 14, 2006 pursuant to 
38 U.S.C.A. § 1728.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

Veteran and his spouse


ATTORNEY FOR THE BOARD

J. Connolly, Counsel
INTRODUCTION

The Veteran had active service from March 1984 to June 1987. 

This case is before the Board of Veterans' Appeals (Board) on 
appeal from a decision by the Department of Veterans Affairs 
(VA) Medical Center in Gainesville, Florida. The Veteran 
disagreed with that decision and was sent a statement of the 
case (SOC) from the VA North Florida/South Georgia Veterans 
Health System. He then perfected an appeal. The Veteran 
testified with his spouse before the undersigned in April 
2009.

The issue of entitlement to payment or reimbursement for 
medical services provided by Halifax Hospital on April 14, 
2006 pursuant to the Veterans Millennium Health Care and 
Benefits Act (Millennium Bill Act) was raised by the 
representative in September 2007, but has not been 
adjudicated by the Agency of Original Jurisdiction (AOJ). 
Therefore, the Board does not have jurisdiction over it, and 
it is referred to the AOJ for appropriate action. 


FINDINGS OF FACT

1. The Veteran received medical treatment provided by 
Halifax Hospital on April 14, 2006.

2. VA payment or reimbursement of the costs of the private 
medical care provided by Halifax Hospital on April 14, 2006, 
was not authorized prior to the Veteran's undergoing that 
treatment and an application was not made to VA within 72 
hours after the hour of admission for authorization.

3. The Veteran is service-connected for brain syndrome, 
rated as 50 percent disabling; tinnitus, rated as 10 percent 
disabling; migraine headaches, rated as 10 percent disabling; 
disabilities of each ankle, each rated as 10 percent 
disabling; facial scars, rated as non-compensable; and jaw 
disability, rated as non-compensable. His combined rating is 
70 percent and he has been awarded a total disability rating 
based on individual unemployability due to service-connected 
disabilities (TDIU). 

4. The medical treatment provided by Halifax Hospital on 
April 14, 2006 was not for a medical emergency.


CONCLUSIONS OF LAW

1. The criteria for payment or reimbursement for medical 
services provided by Halifax Hospital on April 14, 2006, 
based on prior authorization, is not warranted. 38 U.S.C.A. 
§ 1703 (West 2002 & Supp. 2009); 38 C.F.R. § 17.54 (2009).

2. The criteria for payment or reimbursement for medical 
services provided by Halifax Hospital on April 14, 2006, 
under 38 U.S.C.A. § 1728 have not been met. 38 U.S.C.A. §§ 
1710, 1728 (West 2002 & Supp. 2009); 38 C.F.R. §§ 17.52, 
17.53, 17.54, 17.120, 17.121 (2009).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

With respect to the claimant's claim, VA has met all 
statutory and regulatory notice and duty to assist 
provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 
5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326.

Because the claim in this case is governed by the provisions 
of Chapter 71 of Title 38 of the United States Code, the VCAA 
and its implementing regulations are not applicable to such 
claims. See Barger v. Principi, 16 Vet. App. 132, 138 (2002) 
and Lueras v. Principi, 18 Vet. App. 435 (2004). 
Notwithstanding, the Board has reviewed the case for purposes 
of ascertaining that the claimant has had a fair opportunity 
to present arguments and evidence in support of his claim for 
reimbursement of medical expenses. In short, the Board 
concludes from that review that the requirements for the fair 
development of the appeal have been met in this case and that 
the Veteran fully presented his arguments and evidence during 
the course of his claim, including at his personal hearing, 
and thereafter. 

Payment or Reimbursement for Medical Services
Provided by Halifax Hospital on April 14, 2006

The Veteran is service-connected for brain syndrome, rated as 
50 percent disabling; tinnitus, rated as 10 percent 
disabling; migraine headaches, rated as 10 percent disabling; 
disabilities of each ankle, each rated as 10 percent 
disabling; facial scars, rated as non-compensable; and jaw 
disability, rated as non-compensable. His combined rating is 
70 percent and he has been awarded a TDIU. 

According to the Veteran, he injured his left thumb on April 
12, 2006. He called his mother who is a nurse for advice 
regarding his injury. She told him to wrap it in ice, keep 
it elevated above his heart, and to seek medical attention if 
it worsened or swelled. Thereafter, the Veteran indicated 
that he experienced a lot of swelling, so he went to the VA 
Daytona Outpatient Clinic. However, when he arrived, the 
doors were locked and the security person told him that 
everyone was gone for the day and would not return as it was 
the beginning of a three day holiday (the clinic had closed 
early). The Veteran stated that he thought his arm was 
broken. The security person asked him whether he was 100 
percent disabled and the Veteran told him that he was so 
rated. The security officer then said that he should go to 
Halifax Hospital. His wife then took him to Halifax 
Hospital. The Veteran related that his left hand was checked 
for fractures and was x-rayed. The physician indicated that 
his hand should be splinted and he should return in a week. 
The Veteran reported that he went back to VA after that for 
the follow-up treatment. The Veteran stated that he felt 
that this was an emergency because he might have had a broken 
bone and it seemed to be good common sense to seek treatment. 

With regard to the billing, the Veteran explained that there 
were three bills, one for $25 which he had paid, one for $133 
which he had paid, and one for $722 which he had not paid. 
Following the hearing, the Veteran clarified that Medicare 
had paid the last bill for $722, so he was only seeking 
reimbursement for the first two bills which he had already 
paid, i.e., $158. 

A review of the medical records dated on April 14, 2006 from 
Halifax Hospital show that the Veteran presented with left 
hand pain. The examiner noted that the Veteran was in no 
apparent distress. His vital signs were taken without 
incident. The Veteran indicated that he had fallen the day 
before and injured his thumb. He rated the pain as an 8 out 
of 10. There was no numbness, tingling, or weakness of the 
extremity. The Veteran related that it hurt more when he 
tried to flex the finger. On physical examination, there was 
tenderness to palpation to the left metacarpophalangeal (MCP) 
joint and hypothenar eminence. There was no erythema, 
ecchymosis, or edema. He had decreased flexion, but had 
complete extension. The x-rays were unremarkable. The 
diagnosis was left thumb sprain. The Veteran was given 
Darvocet and was told to rest, use ice and elevation, and 
return to follow-up care with an orthopedist. 

The Veteran's claim was disapproved by a VA physician because 
a VA facility was available to provide the non-emergent care 
given to the Veteran by the private facility.

Initially, the Board must make a factual determination as to 
whether VA gave prior authorization for the non-VA medical 
care provided by Halifax Hospital on April 14, 2006. See 38 
U.S.C.A. § 1703(a); see also 38 C.F.R. § 17.54. This is a 
factual, not a medical, determination. See Similes v. Brown, 
5 Vet. App. 555 (1994).

The law provides that, in connection with its statutory 
obligation to provide medical services to veterans, VA may 
contract for private care in certain limited circumstances, 
including cases where a medical emergency exists.

Pursuant to 38 U.S.C.A. § 1703(a), "When Department [of 
Veterans Affairs] facilities are not capable of furnishing . 
. . the care or services required, the Secretary, as 
authorized in [38 U.S.C.A. § 1710 or 1712], may contract with 
non-Department facilities in order to furnish" certain care, 
including: "Hospital care or medical services for the 
treatment of medical emergencies which pose a serious threat 
to the life or health of a veteran receiving medical services 
in a Department facility . . . until such time following the 
furnishing of care in the non-Department facility as the 
veteran can be safely transferred to a Department facility." 
38 U.S.C.A § 1703(a)(3); 38 C.F.R. § 17.52.

The admission of a veteran to a non-VA hospital at the 
expense of VA must be authorized in advance. 38 C.F.R. § 
17.54; see Malone v. Gober, 10 Vet. App. 539, 541 (1997); see 
also VAOPGCCONCL 1-95, at 9 (Mar. 31, 1995) ("Authorization 
in advance is essential to any determination as to whether 
the Department is or is not going to furnish the contract 
care."). In the case of an emergency that existed at the 
time of admission, an authorization may be deemed a prior 
authorization if an application is made to VA within 72 hours 
after the hour of admission. 38 C.F.R. § 17.54.

In this case, there is no evidence that the Veteran obtained 
prior authorization for payment of the private medical 
services provided Halifax Hospital on April 14, 2006. 
Likewise, although an authorization may be deemed a prior 
authorization if an application is made to VA within 72 hours 
after the hour of admission, no such application was made in 
this case. Although the Veteran said that a security guard 
told him to go the private hospital, this is not considered 
prior authorization as it was not provided by a person with 
the authority to make such a referral, such as a VA 
physician. 

Accordingly, the Board must conclude that prior authorization 
for the private medical services provided by Halifax Hospital 
on April 14, 2006, was not obtained pursuant to 38 C.F.R. § 
17.54, and that payment is not warranted for expenses 
incurred in conjunction with that treatment under 38 U.S.C.A. 
§ 1703.

Alternatively, reimbursement for unauthorized medical 
expenses may be made pursuant to 38 U.S.C.A. § 1728.

Generally, in order to be entitled to payment or 
reimbursement of medical expenses incurred at a non-VA 
facility, a claimant must satisfy three conditions. There 
must be a showing that three criteria are met: (a) The care 
and services rendered were either: (1) for an adjudicated 
service-connected disability, or (2) for a non-service-
connected disability associated with and held to be 
aggravating an adjudicated service-connected disability, or 
(3) for any disability of a veteran who has a total 
disability, permanent in nature, resulting from a service-
connected disability, or (4) for any injury, illness, or 
dental condition in the case of a veteran who is 
participating in a rehabilitation program and who is 
medically determined to be in need of hospital care or 
medical services for reasons set forth in 38 C.F.R. 
§ 17.47(i) (formerly § 17.48(j)) (2000); and (b) The services 
were rendered in a medical emergency of such nature that 
delay would have been hazardous to life or health; and (c) No 
VA or other Federal facilities were feasibly available and an 
attempt to use them beforehand or obtain prior VA 
authorization for the services required would not have been 
reasonable, sound, wise, or practicable, or treatment had 
been or would have been refused. See 38 U.S.C.A. § 1728; 38 
C.F.R. § 17.120; see also Zimick v. West, 11 Vet. App. 45, 49 
(1998).

The Veteran's claim was denied because the services rendered 
were not a medical emergency. The Board agrees that this 
criterion is not met in this case. The Veteran has stated 
that he required emergency medical treatment since he had 
swelling and felt that a bone might be broken. An emergency 
is defined as "a sudden, generally unexpected occurrence or 
set of circumstances demanding immediate action." Hennessey 
v. Brown, 7 Vet. App. 143, 147 (1994).

In this case, the Veteran had the left thumb pain for 1-2 
days, by his own admission. Thus, immediate action was not 
felt by the Veteran to be necessary, was not undertaken, and 
was not in fact necessary based on the eventual evaluation. 
The Veteran had pain in his thumb when he went to the private 
hospital, but he was not in apparent distress and his vital 
signs did not indicate distress. The Veteran was given 
rather minimal treatment and was discharged to home. There 
was no fracture and it was determined that he had a thumb 
sprain. Moreover, the VA physician reviewing the file felt 
that there was no emergency. The Veteran did not call for 
emergency services after suffering the fall, he followed the 
advice of a nurse, went to the hospital on his own with his 
wife, was noted to be ambulatory, and not in distress. Thus, 
it is not credible that it was his impression that an 
emergency existed. Although the Veteran needed medical 
treatment, the treatment was not required for an emergency 
situation.

Accordingly, the criteria of 38 U.S.C.A. § 1728 and 38 C.F.R. 
§ 17.120 are not met and the claim must be denied. 


ORDER

Payment or reimbursement for unauthorized medical services 
provided by Halifax Hospital on April 14, 2006, is denied.



____________________________________________
P. M. DILORENZO
Veterans Law Judge, Board of Veterans' Appeals


 Department of Veterans Affairs