Citation Nr: 1527825 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 15-02 554 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUE

Entitlement to a waiver of recovery of an overpayment of VA benefits under the Veterans Retraining Assistance Program (VRAP) in the amount of $5,943.20, to include the validity of the debt.


REPRESENTATION

Appellant represented by: Oklahoma Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Christine C. Kung, Counsel


INTRODUCTION

The Veteran served on active duty from April 1988 to April 1996.

This matter comes on appeal before the Board of Veterans' Appeals (Board) from a May 2014 decision of the Department of Veterans Affairs (VA) Regional Office Regional Office (RO) Committee on Waivers and Compromises in Muskogee, Oklahoma which denied a request for a waiver of an overpayment in the amount of $5,943.20. 

The Veteran testified at a May 2015 Board video conference hearing; the hearing transcript is of record. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. Effective January 31, 2013, the Veteran was dismissed from a training program at the Metro Technology Center, for the enrollment period from August 2012 to May 2013, due to a violation of the school attendance policy. The award of VA VRAP benefits was accordingly terminated, creating an overpayment in the amount of $5,943.20. 

2. The overpayment of VA benefits under the VRAP in the amount of $5,943.20 was validly created. 

3. The creation of an overpayment of VA benefits under the VRAP in the amount of $5,943.20 was not the result of fraud, misrepresentation, or bad faith on the part of the Veteran. 

4. The Veteran was at fault in the creation of the overpayment, and there is no fault on the part of VA in its creation. 

5. Repayment of the overpayment debt would result in some degree of financial hardship to the Veteran. 

6. Recovery of the overpayment of VRAP benefits in the amount of $5,943.20 would not defeat the purpose of the VA assistance program.

7. The failure of the Government to insist upon its right to repayment of the total assessed overpayment in the total amount of $5,943.20 would not result in unjust enrichment of the Veteran. 

8. The Veteran has not relinquished a valuable right or incurred any legal obligations based on his reliance on VRAP benefits received in the amount of $5,943.20.

9. The Veteran has changed his financial position to his own detriment in relying on payment of VRAP benefits in the amount of $5,943.20. 

10. Recovery of an overpayment in the amount of $5,943.20 would be against equity and good conscience. 


CONCLUSIONS OF LAW

1. The overpayment of VRAP benefits in the amount of $5,943.20 was validly created. 38 U.S.C.A. §§ 501, 5302 (West 2014); 38 C.F.R. §§ 1.911, 1.962, 3.500, 21.9635 (2014).

2. The creation of the overpayment, in the amount of $5,943.20, did not involve fraud, misrepresentation, or bad faith on the part of the Veteran. 38 U.S.C.A. 
§ 5302(c) (West 2014); 38 C.F.R. §§ 1.963(a), 1.965(b) (2014).

3. Resolving reasonable doubt in the Veteran's favor, the criteria for waiver of recovery of the overpayment of VRAP benefits in the amount of $5,943.20 are met. 38 U.S.C.A. § 5302 (West 2014); 38 C.F.R. §§ 1.963, 1.965 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Due Process - Waiver of Recovery of an Overpayment

The Veterans Claims Assistance Act of 2000 (VCAA) is inapplicable to the claim for waiver of recovery of an overpayment. See Barger v. Principi, 16 Vet. App. 132 (2002). In Barger, the United States Court of Appeals for Veterans Claims (CAVC) held that the VCAA, with its expanded duties, is not applicable to cases involving the waiver of recovery of overpayment claims, noting that the statute at issue in such cases is found in Chapter 53, Title 38, United States Code, and that the provisions of the VCAA are relevant to a different Chapter (i.e., Chapter 51); therefore, the VCAA is not for application in this matter. 

The Board finds that general due process concerns have been satisfied in connection with the appeal for a waiver. See 38 C.F.R. §§ 3.103(b)(3)(i), 3.105(h) (2014). Moreover, because the Board is granting the full benefit sought on appeal, the Board finds that additional notice and development are not necessary to address the appeal, and the Board may proceed with adjudication on the merits of the Veteran's request for waiver. 

Waiver of Recovery of an Overpayment

A claimant has the right to dispute the existence and amount of the debt. 
38 U.S.C.A. § 501 (West 2014); 38 C.F.R. § 1.911(c) (2014). In determining whether a waiver of overpayment is appropriate, the inquiry is focused on three distinct questions. 

First, VA must determine if the overpayment at issue was validly created. See Schaper v. Derwinski, 1 Vet. App. 430, 434-35 (1991) (noting that before adjudicating a waiver application, the lawfulness of the overpayment must first be decided). The term "overpayment" refers only to those benefit payments made to a designated living payee or beneficiary in excess of the amount due or to which such payee or beneficiary is entitled.

Second, if the debt is valid, VA must determine if fraud, misrepresentation, or bad faith played a role in its creation. If it did, waiver of the overpayment is automatically precluded, and further analysis is not warranted. See 38 U.S.C.A. 
§ 5302(a); 38 C.F.R. §§ 1.963(a), 1.965(b); see also Ridings v. Brown, 
6 Vet. App. 544 (1994) (holding that the Board must independently address the matter of bad faith before addressing whether waiver would be appropriate). 

Finally, if VA determines that the debt is valid and that fraud, misrepresentation, and/or bad faith had no part in its creation, VA must then consider whether collection of the debt would be against equity and good conscience. See 
38 U.S.C.A. § 5302(b); 38 C.F.R. §§ 1.962, 1.963, 1.965. 

An overpayment is created when VA determines that a beneficiary or payee has received monetary benefits to which he or she is not entitled. See 38 U.S.C.A. 
§ 5302; 38 C.F.R. § 1.962. 

Any indebtedness of a veteran can be waived only when the following factors are determined to exist: 1) there is no indication of fraud, misrepresentation, or bad faith on the part of the person or persons having an interest in obtaining the waiver (5302(c); 38 C.F.R. §§ 1.963(a), 1.965(b)); and, 2) collection of such indebtedness would be against equity and good conscience. 38 U.S.C.A. § 5302(c); 38 C.F.R. 
§ 1.963(a). Thus, a finding of fraud, misrepresentation, or bad faith precludes a grant of a waiver of recovery of the overpayment. 

The controlling legal criteria provide that the standard of "equity and good conscience" will be applied when the facts and circumstances in a particular case indicate the need for reasonableness and moderation in the exercise of the Government's rights. 38 C.F.R. § 1.965(a). The decision reached should not be unduly favorable or adverse to either side. The phrase equity and good conscience means arriving at a fair decision between the obligor and the U.S. Government. 

In making this determination, consideration will be given to the following elements, which are not intended to be all inclusive: (1) Fault of debtor. Where actions of the debtor contribute to the creation of the debt. (2) Balancing of faults. Weighing the fault of the debtor against the VA's fault. (3) Undue hardship. Whether collection would deprive the debtor or his or her family of basic necessities. (4) Defeat the purpose. Whether withholding of benefits or recovery would nullify the objective for which benefits were intended. (5) Unjust enrichment. Failure to make restitution would result in an unfair gain to the debtor. (6) Changing position to one's detriment. Reliance on VA benefits results in relinquishment of a valuable right or incurrence of a legal obligation. 38 U.S.C.A. § 5302(c); 38 C.F.R. 
§ 1.965(a). 

In September 2012, the Veteran was awarded benefits payable under the VRAP for the enrollment in a qualifying training program at Metro Technology Center from August 2012 to May 2013. On March 2013, information from Metro Technology center shows that the Veteran's student status had changed for the enrollment period from August 2012 to May 2013 due to unsatisfactory attendance, conduct, or progress. A compliance survey shows that the Veteran was dismissed from the program due to a violation of the school attendance policy as of January 31, 2013. The award of VA VRAP benefits was accordingly terminated, effective January 31, 2013, creating an overpayment in the amount of $5,943.20. Accordingly, the Board finds that the overpayment of educational benefits under the VRAP in the amount of $5,943.20 was validly created based on his dismissal from the qualifying VRAP training program, effective January 31, 2013. 

The Board finds that the overpayment was not the result of fraud, misrepresentation, or bad faith on the part of the Veteran. 38 U.S.C.A. § 5302(c); 38 C.F.R. 
§§ 1.963(a), 1.965(b). The Veteran contends in May 2015 videoconference hearing testimony that due to medical reasons, to include an attack of ketoacidosis and difficulty with depression and anxiety, he had difficulty attending classes at the Metro Technology Center. He testified that he met with the Dean of the program, informing her that he had medical issues, and was told that if he went back for the rest of the term in March 2013, he should be able to get his attendance up to the 80 percent standard. He indicated that he was hopeful that he would be able to meet the attendance goals, and submitted a Certificate of Participation from Metro Technology Centers, dated in May 2013, in support of his contention. Information received from the school shows that the Veteran did not ultimately meet his attendance goals. The Veteran additionally testified that they were going to let him back into the program in August 2013 to finish up the six weeks of missed classes, but the Veteran indicated that he owed additional tuition at that time, which remained unpaid, thus, he could not resume his training. The Veteran testified that in addition to the amounts he owed to VA, he still owed approximately $4,000 to Metro Technology Center. The Board finds that the Veteran's lay testimony is credible. Based on the Veteran's testimony, it appears that the Veteran paid the VRAP benefits he received toward tuition at the Metro Technology Center, and that he failed to meet attendance standards due to medical issues which ultimately led to his dismissal from the program. Accordingly, the Board finds that there was no indication of fraud, misrepresentation, or bad faith on the part of the Veteran in the creation of the overpayment. 

As the evidence does not establish fraud, misrepresentation, or bad faith on the part of the Veteran, the Board will next determine if a waiver of recovery of the VA indebtedness is warranted on the basis of equity and good conscience under 
38 U.S.C.A. § 5302(a); 38 C.F.R. §§ 1.963(a), 1.965(a). For the reasons discussed below, the Board finds that a waiver of the overpayment of VRAP benefits, in the amount of $5,943.20, is warranted. 

The first two elements for consideration under 38 C.F.R. § 1.965(a) are the fault of the debtor, and balancing the fault of the debtor and VA. The Board finds that the Veteran was at fault in the creation of the overpayment, and VA was not at fault in the creation of the Veteran's indebtedness. Information from Metro Technology Center shows that the Veteran was dismissed from the program due to a violation of the school attendance policy. The Board has found that the overpayment of VRAP benefits was properly created based on the change of enrollment status due to the Veteran's dismissal from the program. While the Veteran has shown good cause for failing to meet the program's attendance standard, the Board finds that he is, nonetheless, at fault in creating the debt based on his failure to attend classes and complete the program, with no fault on the part of VA in this regard. 

As to the element of undue financial hardship, the regulation provides that consideration should be given to whether collection of the indebtedness would deprive the debtor or his family of the basic necessities. In an April 2014 Financial Status Report, the Veteran identified total monthly income in the amount of $1,560.00. The Board notes that a September 2012 rating decision shows that the Veteran has been in receipt of nonservice-connected pension benefits since May 2012, that he is disabled due to various nonservice-connected psychiatric and physical disabilities, and the record indicates the Veteran's current income is based solely on receipt of VA disability benefits. In the Financial Status Report, the Veteran identified monthly expenses in the amount of $1,018.00. The Board notes that after taking care of basic necessities such as shelter and food, the Veteran is expected to accord a debt to VA the same regard given to any other debt. Therefore monthly payments on loans and other debts, identified as totaling $542.00 a month, have not been considered in calculating monthly expenses. In April 2014, the Veteran had a monthly balance of $542.00 a month, indicating that a repayment of the debt would result in at least some degree of financial hardship to the Veteran. 

The Board finds that during a May 2015 Board hearing, the Veteran identified significant changes in his financial status. At the time of the hearing, the Veteran reported having separated from his wife, and reported making payments toward the support of his wife and child. He additionally testified that he had been admitted to Red Rock Therapeutic Community for the treatment of his mental health issues, and testified that he was a part of a Grant Per Diem Program there because he was considered a homeless veteran. Given the information provided on the April 2014 Financial Status Report, his current homeless status, and lack of income outside of his VA disability payments, resolving the reasonable doubt in favor of the Veteran, the Board finds that repayment of the debt would result in financial hardship to the Veteran. 

With regard to the other elements pertaining to the principles of equity and good conscience as set forth by 38 C.F.R. § 1.965(a), the Board finds a waiver of the overpayment, in the amount of $5,943.20, would not result in unjust enrichment by the Veteran. In that regard, it appears that the Veteran used the overpayment of VRAP benefits to meet the costs of his training program during the relevant period of enrollment, and based on the Veteran's hearing testimony, additional tuition costs still remain due. Thus, the Board finds that the failure of the Government to insist upon its right to repayment of the assessed overpayment would not result in unjust enrichment of the Veteran in this case.

The Board finds that recovery of the overpayment, in the amount of $5,943.20, would not defeat the purpose for which benefits were intended. The Board finds that the award and disbursement of VRAP assistance benefits was made for the purpose of retraining unemployed, eligible veterans in a high demand occupation. See VOW to Hire Heroes Act of 2011, title II of Public Law 112-56 (2011). Thus, the collection of the debt, in the amount of $5,943.20 would not defeat the purpose of the benefits as the Veteran was not ultimately able to complete the qualifying training program in which he was enrolled due to his failure to meet the program's attendance standards. 

The Board finds that Veteran has not relinquished a valuable right or incurred any legal obligations based on his reliance on the receipt of VRAP benefits in the amount of $5,943.20. The Veteran had identified any rights or legal obligations which were incurred based on a reliance on the receipt of VRAP benefits 4. 

The Board finds that the Veteran has changed his financial position to his own detriment in relying on payment of VRAP benefits in the amount of $5,943.20. In that regard, while the Veteran did not ultimately complete the program at Metro Technology Center, it appears that he did start the program prior to having attendance problems due to medical issues. The Board finds that a May 2013 certificate of participation from Metro Technology Center tends to confirm that the Veteran made some effort to participate in the program and meet attendance requirements. Moreover, it appears, based on the Veteran's hearing testimony, that additional amounts still remained due on the Veteran's tuition at Metro Technology Center for the relevant enrollment period. Accordingly, the Board finds that the Veteran had changed his financial position by enrolling in a program based on the expectation of receiving relevant VRAP education benefits in the amount of $5,943.20 for the payment of tuition. 

Given the fact that the overpayment debt was not a result of fraud, balancing other factors discussed above, to include the Veteran's fault in the creation of the debt, financial hardship shown by the Veteran if the debt were to be repaid, a lack unjust enrichment by the Veteran if part of the debt were to be waived, the purpose for which benefits were intended, and the Veteran's reliance on those education benefits, the Board finds, resolving all reasonable doubt in favor of the Veteran, that recovery of the overpayment in the amount of $5,943.20, would be against the principles of equity and good conscience. For the reasons stated above and resolving the benefit of the doubt in favor of the Veteran, the Board finds that the criteria for a waiver of recovery of VA benefits in the amount of $5,943.20 have been met. See 38 C.F.R. §§ 1.963, 1.965. 


ORDER

A waiver of recovery of an overpayment of VRAP benefits in the amount of $5,943.20 is granted.




____________________________________________
K. J. Alibrando
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs