http://www.va.gov/vetapp16/Files5/1639921.txt

Citation Nr: 1639921 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 10 36 152 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida

THE ISSUE

Whether the November 2009 discontinuance of Vocational Rehabilitation and Employment (VR&E) services under the provisions of Chapter 31, Title 38, of the United States Code, was proper.

(The issues of entitlement to increased ratings for type 2 diabetes mellitus and peripheral neuropathy of both lower extremities as well as service connection necrobiosis of the feet, sleep apnea, hypertension and posttraumatic stress disorder will be addressed in a separate decision, under a separate docket number.)

REPRESENTATION

Appellant represented by: Kenneth L. LaVan, Attorney

WITNESSES AT HEARING ON APPEAL

Appellant and his spouse

ATTORNEY FOR THE BOARD

K. Hughes, Counsel

INTRODUCTION

The Veteran served on active duty from June 1967 to October 1969. 

This matter comes before the Board of Veterans' Appeals (Board) from a November 2009 decision of the Department of Veterans Affairs (VA) Vocational Rehabilitation and Employment Division of the Regional Office (RO) in St. Petersburg, Florida. 

The Veteran testified before the undersigned in May 2015. A transcript of the hearing is of record.

FINDING OF FACT

As the Veteran declined the Individualized Extended Evaluation Plan (IEEP or Extended Evaluation plan) offered to him in June 2009, he did not maintain satisfactory conduct and cooperation in implementing a program of vocational rehabilitation services and feasibility of achieving his vocational goal is not demonstrated at this time; mitigating circumstances beyond his control have not been demonstrated.

CONCLUSION OF LAW

The criteria for the November 2009 suspension of vocational rehabilitation benefits under the provisions of Chapter 31, Title 38, United States Code, were met. 38 U.S.C.A. §§ 3111, 5107 (West 2014); 38 C.F.R. §§ 21.197, 21.198, 21.362, 21.364 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. These provisions do not apply in cases where the applicable chapter of Title 38 of the United States Code contains its own notice provisions, which is the case here. Barger v. Principi, 16 Vet. App. 132 (2002). For VR&E benefits, VA must inform a veteran in writing of findings affecting receipt of benefits and services under Chapter 31, including. Such written notice must inform the veteran of how the decision was made, how the decision could affect his VA benefits, how he could apply for additional VR&E benefits and what he could do if he disagreed with the decision. 38 C.F.R. §§ 21.32, 21.420(a). 

An October 2009 letter notified the Veteran that his VR&E services were suspended because he declined the Extended Evaluation plan and VA was unable to establish the feasibility of achieving his vocational goal. He was also notified that his VR&E claim would be denied if he did not contact his vocational rehabilitation counselor and sign and return the Extended Evaluation plan within 30 days. A November 2009 letter notified him that his VR&E services had been stopped, why they had been stopped, what he could do to reopen his claim, how his other VA benefits are affected and what to do if he disagreed with the decision. 

The Board also finds that the duty to assist has been satisfied in this case. The Veteran's VR&E folder, which contains all information and evidence necessary to adjudicate this appeal, has been obtained. There is no evidence of any further outstanding records relevant to the Veteran's current claim. As such, the duty to assist in this case has been satisfied.

Analysis

At the outset, the Board notes that it has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by a veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

The provisions of Chapter 31, Title 38, United States Code are intended to enable veterans with service-connected disabilities to achieve maximum independence in daily living and, to the maximum extent feasible, to become employable and to obtain and maintain suitable employment. 38 U.S.C.A. § 3100. Basic entitlement to Chapter 31 benefits requires that the veteran have a service-connected disability that is rated 20 percent disabling or more, and be found by the VA to be in need of rehabilitation because of an employment handicap. 38 U.S.C.A. § 3102; 38 C.F.R. § 21.40. 

Turning to the specific facts of the Veteran's claim, the Board observes that his basic eligibility for vocational rehabilitation benefits is not at issue. It is uncontested that the Veteran has service-connected disabilities compensable at a level of 20 percent or more, and that he has been found to be in need of rehabilitation to overcome an employment handicap. 38 U.S.C.A. §§ 3101, 3102; 38 C.F.R. §§ 21.40, 21.51(b). Rather, his claim for continued vocational rehabilitation and training has been denied on the basis that his vocational goal is not reasonably feasible. 

Generally, a veteran seeking Chapter 31 vocational rehabilitation training will initially be assigned a specific case status of "applicant," and if he or she attends the appointment for an initial evaluation, progresses to "evaluation and planning" status. See 38 C.F.R. § 21.180. During evaluation and planning status, it is determined whether the veteran has an employment handicap and whether achievement of a vocational goal is feasible, and a plan is developed. See 38 C.F.R. § 21.184. When a decision concerning achievement of a vocational goal cannot be made during the initial evaluation, the veteran may be assigned to "extended evaluation" status, and extended evaluation status is continued whenever a veteran is receiving rehabilitation services prescribed in the Individualized Extended Evaluation Plan (IEEP). 38 C.F.R. § 21.188. 

A veteran in "extended evaluation" status will remain in that status until one of the following occurs: following notice of necessary arrangements to begin an extended evaluation including date of beginning the evaluation and steps to be taken, the Veteran fails to report or does not respond to followup, declines or refuses to enter the program, or defers induction exceeding 30 days beyond scheduled date of induction except where illness or other sufficient reason is given; VA determines the reasonable feasibility of a vocational goal for the veteran before the completion of all of the planned evaluation because the decision does not require the further evaluation; the veteran completes the extended evaluation; either the Veteran or VA interrupts or discontinues the extended evaluation; or service connection for the Veteran's service-connected disability is severed by VA or his continued eligibility otherwise ceases. 38 C.F.R. § 21.188(d).

Under the applicable law and regulations, the term "vocational goal" means a gainful employment status consistent with the veteran's abilities, aptitudes and interests. VA shall determine the reasonable feasibility of achieving a vocational goal in each case in which a veteran is eligible to receive Chapter 31 benefits. 38 U.S.C.A. §§ 3101, 3106; 38 C.F.R. § 21.53. 

In order to find that the achievement of a particular vocational goal is reasonably feasible, the facts must show that the effects of the veteran's disabilities, when considered in relation to his circumstances, do not prevent successful pursuit of a vocational rehabilitation program and successful employment. 38 C.F.R. §§ 21.35, 21.53(d). The criteria of feasibility are: (1) a vocational goal must be identified; (2) the veteran's physical and mental conditions must permit training to begin within a reasonable period; and (3) the veteran must possess the necessary educational skills and background to pursue the goal. 38 C.F.R. § 21.53(d). The criteria for a finding of reasonable feasibility for vocational training purposes are not the same as those considered when assigning disability ratings under the schedule for rating disabilities. See 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. 

Achievement of a vocational goal is not reasonably feasible if the effects of a veteran's disabilities (service-and nonservice-connected), when considered in relation to his circumstances, prevent him from successfully achieving a vocational goal, or are expected to worsen within the time period needed to achieve the goal, thereby making achievement not reasonably feasible. 38 C.F.R. § 21.35(h)(3).

In March 2009, the Veteran was found entitled to Chapter 31 VR&E services. In connection with his application for VR&E services, the Veteran provided his college transcripts, Certificate of Radiography by the American Registry of Radiologic Technologists, Certificate of Restoration of Civil Rights by the State of Florida Office of Executive Clemency, letter from the American Registry of Radiologic Technologists stating that ineligibility sanctions have been removed, State of Florida general radiographer license and Basic Life Saving for Healthcare Providers certification. 

In June 2009, the Veteran's Vocational Rehabilitation Counselor (Counselor) requested that the Veteran sign an Extended Evaluation plan. The objective was to "Participate in Compensated Work Therapy, volunteer or work activity for at least 4 consecutive months, to determine cognitive, emotional, and physical stamina for employment, and identify potential barriers to employment." 

In a July 2009 Feasibility Worksheet, the Counselor notes that it is "uncertain" if the Veteran's achievement of a vocational goal is currently feasible because the Veteran is 62 years old and has not worked in 4 years, as per his own statement. He has both physical and emotional problems, with are still unstable. He has an extensive criminal and substance abuse history. Nevertheless, veteran expresses a strong desire to work, has sufficient education to qualify him for employment, and presents very well. An IEEP appears warranted to identify and address any factors keeping him from securing gainful employment. 

Counseling case notes show that the Veteran "disagrees with the Extended Evaluation proposed to him, especially with the volunteering component of it. Veteran says he has worked very hard over the years, has a lot of skill and education, and shouldn't have to work for no money." It was explained to him that "volunteering will allow him to get his foot in the door and make himself known to an employer. He will also have to pass background checks when he applies to volunteer in hospitals, which will let us know if it is his background that is keeping him from employment." The counselor noted that the Veteran was not receptive to these reasons and refused to sign the IEEP. See July 14, 2009 WINRS Case Note. 

In a July 18, 2009 email to the Veteran, his Counselor explained that she and her supervisor agreed that his "background may be playing a factor in [his] difficulties finding work, despite the fact that [his] civil rights have been restored." The counselor further explained that she knew he did not want do volunteer work and she was not insisting on it; however, she wanted him "to apply for several volunteer positions in hospitals. Go through the whole application and interview process up [to] the point where [he is] accepted as a volunteer" because "seeing the outcome of the process may clear up some of our doubts." In subsequent communications with the Veteran, the Counselor repeated her request that the Veteran "merely go through the application process at a few hospitals to see what kind of response [he] would get." See August 31, 2009 email to the Veteran. 

An August 2009 Case Note shows that the Veteran agreed to apply for a volunteer position. 

However, in an August 26, 2009 email, the Veteran stated that he was "considerably confounded and conflicted" with the "insistence" that he apply for a volunteer position which is "the antithesis of [his] goals." In an August 31, 2009 email, the Veteran stated that he had previously passed a background check to work at Miami International Airport while in the employment of an air conditioning mechanical contracting company. 

A September 17, 2009 Case Note shows that the Veteran had been "applying for a number of opportunities and never getting any results." 

An October 2, 2009 Case Note shows that the Veteran "was supposed to report his progress by 9/25/09. The only thing he did was send a resume, but did not give feedback on any of the leads provided or other tasks assigned. He has not applied for a volunteer position as previously requested." The Counselor noted that she still believed "an IEEP, including a volunteer component, is the appropriate course of action on this, particularly in light of his refusal to even apply for a volunteer position or to follow the EC's instructions." The Counselor determined to mail another proposed IEEP to the Veteran with a proposed suspension letter and a 30 day deadline. 

Accordingly, an October 2, 2009 letter notified the Veteran that his VR&E services were suspended because he declined the Extended Evaluation plan and VA was unable to establish the feasibility of achieving his vocational goal. He was also notified that his VR&E claim would be denied if he did not contact his vocational rehabilitation counselor and sign and return the Extended Evaluation plan within 30 days. 

A November 2009 letter notified the Veteran that his VR&E services had been stopped because he had declined an Extended Evaluation plan and VA was unable to establish the feasibility of achieving a vocational goal. 

During his May 2015 Board hearing, the Veteran recalled difficulty dealing with VR&E counselors and obtaining his employment goals. 

In this case, after a review of all of the evidence of record, including the Veteran's statements, the Board concurs with the determination of the VR&E Counselor that the Veteran's vocational goal is not reasonably feasible at this time.

Prior to an adjudication on whether the achievement of the veteran's vocational goal is reasonably feasible for purposes of entitlement to vocational rehabilitation and training under Chapter 31, the RO must address: what explanation of the purpose of the initial evaluation was provided to the veteran and how the veteran was informed of any suspension of the initial evaluation, the reasons for the suspension, and the steps necessary to resume the initial evaluation (38 C.F.R. § 21.50(e)); how the veteran was informed of his responsibility for satisfactory conduct and cooperation (38 C.F.R. § 21.362(b)); what reasonable counseling efforts have been made (38 C.F.R. § 21.364(a)); what change in status have been made (38 C.F.R. § 21.180-.198); what notification of any such change he had received (38 C.F.R. §§ 21.180(d), 21.420); and the applicability of special review and any actions taken under that provision (38 C.F.R. § 21.198(b)(7)). Wing v. West, 11 Vet. App 98 (1998) 

In this case, the RO explained the purpose of the initial evaluation to the Veteran in a February 2009 letter, explaining that VA needed enough information to determine whether the Veteran needed rehabilitation to find and keep a suitable job. The Veteran was informed of his responsibility and his need to cooperate in the same letter, as the RO advised him that if he did not come to meetings with his counselor VA would not have enough information and "[t]hen we will have to turn down your application for rehabilitation." In June 2009, the Veteran was emailed his proposed Extended Evaluation plan. Under "evaluation criteria" that form listed "[v]eteran will comply with scheduled appointments, exams, treatment recommendations, medication or counseling as prescribed." The vocational rehabilitation folder documents that reasonable counseling efforts were made. The Veteran's first VA counselor, H.A., discussed the situation with the Veteran multiple times via email and telephone; staffed the case with her supervisor; and set up an appointment with the employment coordinator.

The Veteran was informed of his suspension by an October 2009 letter which informed him of the reason for his suspension: he had declined the Extended Evaluation plan which had been offered to him and the vocational rehabilitation office had not been able to establish the feasibility of achieving his vocational goal. He was advised in the same letter that to resume his claim, he needed to call his rehabilitation counselor and sign the Extended Evaluation plan. A November 2009 letter notified the Veteran that his VR&E services had been stopped because he had declined an Extended Evaluation plan and VA was unable to establish the feasibility of achieving a vocational goal. As the Veteran did not have a service-connected disability rated 50% or more disabling, the "special review" provisions are not applicable.

The Board acknowledges the Veteran's assertions regarding his difficulties with VR&E counselors and obtaining his employment goals. However, the evidence of record demonstrates that the VR&E Counselor attempted to engage the Veteran in services despite his lack of participation, and VA has fulfilled its obligation to assist the Veteran in pursuing a vocational goal. 

In sum, the record reflects the Veteran experiences significant impairment from his service-connected and nonservice-connected disabilities, criminal background and history of substance abuse; he declined to sign an Extended Evaluation plan and his VR&E Counselor with extensive specialized training in vocational rehabilitation concluded that VA is unable to establish the feasibility of achieving a vocational goal. Therefore, the Board finds that the Veteran did not maintain satisfactory conduct and cooperation in developing and implementing a program of rehabilitation services (and mitigating circumstances beyond his control are neither claimed by the Veteran nor demonstrated by the record). Accordingly, it was proper to discontinue vocational rehabilitation benefits to the Veteran under the provisions of 38 C.F.R. § 21.364. See 38 C.F.R. § 21.364(a); see also McRae v. Brown, 9 Vet. App. 229, 233-34 (1996).

ORDER

The November 2009 discontinuance of vocational rehabilitation benefits was proper.

____________________________________________
M. C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs